IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-vs.-

THOMAS HEBERLE,

                                    Defendant.

**OBJECTIONS TO PRE-SENTENCE REPORT AND STATEMENT WITH RESPECT TO SENTENCING FACTORS**

Docket No. 11-CR-6004

---

The defendant, THOMAS HEBERLE (hereinafter "Mr. Heberle"), through his attorneys, Harris Beach PLLC, Thomas A. DeSimon, of Counsel, in accordance with the Court's Sentencing Guideline Order dated January 21, 2011, hereby submits these Objections to the Pre-Sentence Investigation Report dated April 4, 2011and this Statement With Respect to Sentencing Factors for the Court's consideration, in anticipation of sentencing on May 6, 2011.

## OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT

1.      In the first instance, Mr. Heberle objects to Paragraph 23 of the Pre-Sentence Investigation Report which applies the Specific Offense Characteristic enhancement under §2B1.1(b)(13), which increases the offense level to a Level 14 on the basis that the defendant's conduct created a "conscious or reckless risk of death or serious bodily injury."

2.      Mr. Heberle also objects to Paragraph 25 of the Pre-Sentence Investigation Report which applies an Adjustment for Role in Offense, pursuant to §3B1.3, for "an abuse of position of trust."

HARRIS BEACH ᴾᴸᴸᶜ
ATTORNEYS AT LAW

### A.  §2B1.1(b)(13) Enhancement

3.      In Paragraph 6 of the Plea Agreement entered into between the parties on January 21, 2011 and, pursuant to which, Mr. Heberle entered a plea of guilty to a violation of 18 U.S.C. §1001(a)(3), the parties determined and agreed that Federal Sentencing Guidelines §2B1.1(a)(2) applies to the offense of conviction and provides for a base offense level of 6. Pursuant to Paragraph 7 of the Plea Agreement, the Government maintained that a two level increase pursuant to §3B1.3 applied, but Mr. Heberle specifically reserved his right to argue at sentencing that said Adjustment for Role in the Offense does not apply.

4.      The parties contemplated no further Specific Offense Characteristic or Offense Role adjustments for Mr. Heberle's conduct and, presumably, the Government contemplated the applicability of the §2B1.1(b)(13) enhancement and determined that same did not apply to that conduct.   Mr. Heberle entered a plea of guilty to the 18 U.S.C. §1001 violation in accordance with that understanding.

5.      It is respectfully submitted that the §2B1.1(b)(13) enhancement should not be applied in this case because the offense to which Mr. Heberle entered a plea of guilty was the filing of a false abatement certification, rather than the act of spray painting, which is the act deemed by the Pre-Sentence Investigation Report to warrant the §2B1.1(b)(13) enhancement.

6.      The case law applying the §2B1.1(b)(13) enhancement (and its predecessor[1]) makes it clear that the application of the enhancement applies in situations wherein the fraudulent conduct itself created the risk that others would suffer serious bodily injury. U.S. v. Lucien, 347 F.3d 45 (2d Cir. 2003).  In Lucien, the Second Circuit held that the enhancement

---

[1] Section 2F1.1(b)(4)(A) of the 1997 version of the United States Sentencing Guidelines.

for "conscious or reckless risk of serious bodily injury" was applicable where the defendant was convicted of health care fraud for participating in a scheme involving staged car accidents, fake medical injuries and the subsequent submission of fraudulent medical bills and records to obtain payment for such non-existent injuries. The Court found that the defendant recklessly created risk of serious bodily injury in the arrangement of those car accidents and, therefore, the enhancement was warranted.

7.    In U.S. v. Butler, 162 F.3d 1149 (2d Cir. 1998), the Second Circuit affirmed the application of the §2B1.1(b)(13) enhancement in a case in which the defendant pled guilty to conspiracy to steal mail and to forge checks stolen from the mail. In Butler, the defendant organized a gang whose members stole mail from postal jeeps, prepared false identification, altered stolen checks, recruited others to pose as allegedly authorized negotiators of checks, cashed checks at banks and threatened and injured individuals who refused to be recruited or to continue to work for the defendant's gang. In addition, one victim of the fraud scheme was actually punched and hit across the back with a chair. There, the Court found that the specific activity for which defendant entered his plea of guilty warranted the enhancement for conscious or reckless risk of serious bodily injury because injury to defendant's victims was an essential part of the criminal conduct.

8.    In U.S. v. Mizrachi, 48 F.3d 651 (2d Cir. 1995), the defendant defrauded a bank to purchase a warehouse and then committed arson to collect insurance proceeds. There, the Second Circuit upheld the application of a two level enhancement for risk of serious bodily injury, finding that arson was part and parcel of the scheme to defraud.

9.    Cases in other circuits have vacated the application of the §2B1.1(b)(13) enhancement where the risk of harm did not result from the offense itself. In U.S. v. Rizzo,

250 Fed. Appx. 612 (5th Cir. 2007), the application of the enhancement[2] was vacated wherein the defendant was convicted of conspiracy to possess stolen mail material, but the Court found that the risk of harm did not result from the offense itself, but from events that occurred while the defendant was fleeing from the crime to escape law enforcement officers.  In Rizzo, the Government conceded, as is expected here, that the enhancement only applies when the risk of bodily injury results from the fraudulent offense conduct itself and, thus, the defendant should not have received the enhancement.

10.    Similarly, in U.S. v. Vernier, 152 Fed. Appx. 827 (11th Cir. 2005), the defendant pled guilty to unauthorized use of a victim's credit card and the transportation of stolen jewelry across state lines.  The District Court granted the Government's motion for a 15 level upward departure under §5K2.1, contending that the defendant caused the death of a victim in the course of committing the charged crimes.  The defendant filed an appeal on the ground that the upward departure was legally preempted by §2B1.1(b)(11) (now, subsection 13), because §2B1.1(b)(11) had already taken the death into account.  The Eleventh Circuit rejected defendant's argument and affirmed the sentence.  In doing so, the Eleventh Circuit held that §2B1.1(b)(11) (now, subsection 13) "applies only where the defendant's offense conduct intrinsically carries the conscious or reckless risk of death or injury.  In this case, Vernier's offense conduct – driving a van across state lines with stolen jewelry, and using a third person's credit card without authorization – carries no inherent risk of death or serious bodily injury."  The Eleventh Circuit distinguished the Second Circuit's decision in Lucien, supra, observing that its case was nothing like Lucien, wherein §2B1.1(b)(11) was applied to a

---

[2] The enhancement provision was then set forth in Section 2B1.1(b)(12)(A) of the United States Sentencing Guidelines.

HARRIS BEACH
ATTORNEYS AT LAW

fraud conviction involving fabricated automobile collisions, "conduct inherently carrying a risk of death or serious injury."

11.     Finally, in U.S. v. Hall, 71 F.3d 569 (6th Cir. 1995), the Court held that a two level enhancement for "conscious or reckless risk of serious bodily injury (under §2F1.1(b)(4) of the United States Sentencing Guidelines), was improperly applied by the District Court to a bank fraud defendant, based on risk of injury caused by a high speed chase, because the risk of bodily injury did not result from the harm itself, but from events happening while the defendant was fleeing the crime.  In its decision, the Court cited Mizrachi and Echevarria and observed that the relevant legislative history suggested that the guideline was only meant to apply where the risk of bodily injury results from the fraud itself.  There, it held "the upward adjustment permitted by §2F1.1(b)(4), (now, §2B1.1(b)(13)) serves a specific and limited purpose, to punish those whose fraudulent behavior directly causes the risk of serious bodily injury." (emphasis added)

12.     In the present case, Mr. Heberle's criminal conduct was the provision to OSHA on August 21, 2008 of a signed Certification of Abatement in which he certified that Heberle Disposal Services corrected several workplace hazards, including the stopping of indoor spray painting.  The conduct for which Mr. Heberle stands convicted is the filing of the signed Certification of Abatement with OSHA, rather than the actual act of spray painting, which was the subject of a previous OSHA administrative action.

## B.    §3B1.3 Enhancement

13.    As reserved in Paragraph 25 of the Plea Agreement entered into between the parties, Mr. Heberle also objects to the application of the Role in the Offense adjustment, pursuant to §3B1.3, which results in a two level increase for an "abuse of a position of public or private trust." It is respectfully submitted that Mr. Heberle did not occupy a position of trust vis-à-vis OSHA in his submission of the Certification of Abatement to it.

14.    The Commentary under §3B1.3 sets forth a number of examples involving attorneys, doctors and bank executives engaging in fraudulent schemes that are difficult to detect, wherein defendants used their position of trust in a fiduciary relationship to commit embezzlement, loan schemes, health care schemes and the like. There is no such fiduciary relationship between Mr. Heberle and OSHA.

15.    In U.S. v. Broderson, 67 F.3d 452 (2d Cir. 1995), the defendant was convicted of executing a major fraud scheme against the United States Government, wire fraud and making false statements in connection with a contract under which defendant's employer agreed to provide hardware and services to NASA. The defendant was the Vice President of Business Operations and responsible for the contract. Although The Truth in Negotiations Act ("TINA") and its regulations required the defendant to disclose all cost and pricing data to NASA before agreement was reached, the defendant signed and submitted to NASA certifications of cost and pricing data that falsely stated that the pricing data provided was accurate and complete, when in fact it was not. On appeal, the defendant challenged the District Court's application of the §3B1.3 enhancement for abuse of position of trust. There, the Court found that the defendant did not occupy a position of trust vis-à-vis the Government and but for TINA and its regulations which imposed obligations upon the defendant, the

HARRIS BEACH ≅
ATTORNEYS AT LAW

defendant would not have been under a duty to inform the Government of the anticipated cost or to certify that such information was accurate.

16.     Like <u>Broderson</u>, in the present case, it is the Occupational Safety and Health Act and its regulations that required Mr. Heberle to certify that the violation was cited by OSHA in its inspection had been abated.  In <u>Broderson</u>, the Court further found that just because the defendant was a high executive with "professional managerial discretion," did not mean that he occupied a position of public or private trust within the meaning of the guidelines because such discretion must have been entrusted to the defendant by the victim and NASA (or in the present case, OSHA) had entrusted the defendant with no discretion whatsoever and whatever "trust" NASA had placed in the defendant was based strictly on the explicit commands of TINA and its regulations (equivalent to the regulatory requirements of the Occupational Safety and Health Act and its regulations).

17.     Similarly, in <u>U.S. v. Jolly</u>, 102 F.3d 46 (2d Cir. 1996) the defendant, a corporate president and principal who was convicted of mail fraud for procuring loans to the corporation, was found not to be in a position of trust vis-a vis the lenders as the Second Circuit found that the borrower–lender relationship is arms-length and that where fraud occurs in arms-length transactions not involving fiduciary relationships, the trust that is abused is simply the reliance of the victim on the misleading statement or conduct of the defendant. The Court further found that limiting the enhancement to the misuse of the discretionary authority entrusted by the victim or on the victim's behalf is consistent with the examples given in the Commentary to §3B1.3 in that each involved examples in which the defendant occupied a position vis-à-vis the victim that is in the nature of a fiduciary relationship, which is absent here.

18.     While Mr. Heberle's position as President of Heberle Disposal Services places him in a "position of trust," as that term is defined in §3B 1.3, the two level enhancement is inapplicable because Mr. Heberle did not owe a fiduciary duty to OSHA and but for OSHA regulations which imposed obligations upon Mr. Heberle, Mr. Heberle would not have been under a duty to inform OSHA that any workplace violations had been abated (U.S. v. Broderson, supra).

## STATEMENT WITH RESPECT TO SENTENCING FACTORS

19.     As this Court is well aware, 18 U.S.C. §3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Paragraph 2" of that provision, including the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.  18 U.S.C. §3553(a)(2).

20.     In fashioning a sentence that complies with the "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing, "(Kimbrough v. United States, 552 U.S. 85, the Court should consider a broad range of factors, including the nature and circumstances of the offense and the history and characteristics of the defendant.   Gall v. United States, 552 U.S. 38.   It is respectfully submitted that, after such consideration, the ends of justice and the purposes of 18 U.S.C. §3553 will best be served by imposing upon Mr. Heberle a sentence to a term of probation, pursuant to Section 5B 1.1 of the Sentencing Guidelines.

21.     In accordance with the Plea Agreement entered into between Mr. Heberle and the Government (See ¶ 11), if Guidelines Section 3B 1.3 applies, with a total offense level of 6 and a criminal history category of I, the defendant's range would be a term of imprisonment of zero to six months, a fine of $500.00 to $5,000.00, and a period of supervised release of two to three years.  If Guidelines Section 3B 1.3 does not apply, with a total offense level of four and a criminal history category of I, the same sentencing range would apply.

22.     The Plea Agreement further recognizes the enhanced scope of this Court's sentencing discretion in the post-Booker world of advisory guidelines (U.S. v. Jones, 460 F.3d 191, 195 (2d Cir. 2006)) in that the Court must consider but is not bound by the Sentencing Guidelines.   It is respectfully submitted that, in this case, a term of incarceration is not necessary to satisfy just punishment, to prevent further crimes by Mr. Heberle or to provide rehabilitation in the most effective manner.

23.     It is respectfully submitted that the Court should consider the following factors in determining that a term of probation will ensure that Mr. Heberle does not receive a sentence greater than the minimally sufficient one under 18 U.S.C. §3553(a).  In the first instance, the violation of 18 U.S.C. §1001(a)(3) is not a crime of violence.  As set forth in 28 U.S.C. §994(j), prison is generally inappropriate in cases, such as this, in which "the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense."  As recognized in the Plea Agreement and the Pre-Sentence Investigation Report, Mr. Heberle has no prior criminal history and has therefore been designated a criminal history category of I.

24.     Not only has Mr. Heberle accepted responsibility before this Court, he has made amends with OSHA by entering into Stipulated Settlements with respect to all of the OSHA citations that were the subject of the investigation that eventually brought him before this

Court. Those Stipulated Settlements included the required payment of some extremely significant penalties (*see* Exhibit "A").

25.    In addition thereto, Mr. Heberle has retained the consulting services of Construction Safety Management, Inc., which ensured that all OSHA citations for past inspections have been reviewed and properly abated, has instituted a written health and safety program, and engaged in a training program for all employees (Exhibit "B"). Clearly, both Mr. Heberle and his company have learned their lesson, taken the appropriate steps to remedy the deficiencies in health and safety, and incurred significant penalties for past deficiencies.

26.    In this instance, it is respectfully submitted that a sentence of probation is all that is necessary to meet the goals of 18 U.S.C. §3553(a)(2), in light of Mr. Heberle's personal history and characteristics, including his long work record, lack of prior criminal record, his low recidivism risk and the fact that his is not only sole support of his family, but is indispensible to the operations of Heberle Disposal Service, Inc. Enclosed herewith as Exhibit "C" is a letter from Patricia Loveland, Chief Financial Officer at Heberle Disposal Service, Inc., outlining Mr. Heberle's duties with the company. As set forth therein, Heberle Disposal Service, Inc. employs approximately 60-65 people and services 16,000 to 18,000 customers per month. Mr. Heberle is responsible for all of the day-to-day operations of the company, including scheduling and vehicle maintenance. As observed by Ms. Loveland, "[T]he company needs Tom Heberle here, working every day, to make it run. If he is incarcerated for a period of time, I believe it would significantly damage the company – and could possibly lead to it closing."

27.     Without Mr. Heberle's presence and efforts on a daily basis, business operations will cease, resulting in a substantial, direct and specific loss of financial support to Mr. Heberle's family and the loss of employment for all of his staff. Because Mr. Heberle is such a key component of the operation, the loss of his financial support would substantially exceed the harm ordinarily incident to incarceration for a similarly situated defendant. The loss of Mr. Heberle's financial support is one for which no effective remedial or ameliorative programs reasonably are available, making Mr. Heberle's financial support irreplaceable to his family. Mr. Heberle's three children, are all college students. Mr. Heberle's wife is a homemaker. The imposition of a term of probation, therefore, will effectively address that potential loss of financial support.

28.     Mr. Heberle also suffers from some significant medical issues, including multiple sclerosis, hypertension, diabetes and high cholesterol. (*See* Exhibit "D".) All of these afflictions receive ongoing treatment and medication.

29.     At the time of the entry of his guilty plea, Mr. Heberle advised the Court that the factual basis section of the Plea Agreement accurately reflected his conduct in the instant offense. As a supplement to his guilty plea, I enclose herewith a letter authored by Mr. Heberle to the Court, apologizing for his actions, recognizing the illegal nature of those actions and pledging that nothing of this nature will occur again (*see* Exhibit "E"). There is, therefore, no sentence that needs to be imposed for the purpose of protecting the public from further crimes of Mr. Heberle. It is readily apparent that Mr. Heberle has learned his lesson.

30. For the reasons stated herein, Mr. Heberle respectfully requests that the Court not apply the enhancement and adjustment set forth in §2B1.1(b)(13) and §3B1.3, respectively, and that it impose a sentence of an appropriate term of probation. Such a sentence will accomplish the sentencing goals of 18 U.S.C. §3553(a) by imposing a sentence that is "sufficient but not greater than necessary" to meet the goals of sentencing.

Dated: April 12, 2011
      Pittsford, New York

                            Respectfully submitted,

                            HARRIS BEACH PLLC

By:    s/Thomas A. DeSimon
       Thomas A. DeSimon
       *Attorneys for Defendant*
       *Thomas J. Heberle, Jr.*
       99 Garnsey Road
       Pittsford, New York 14534
       (585) 419-8800
       tdesimon@harrisbeach.com

TO:    Craig R. Gestring, Esq.
       Assistant U.S. Attorney
       United States Attorneys Office
       Western District of New York
       100 State Street, Room 620
       Rochester, New York 14614
       craig.gestring@usdoj.com

       Sarah C. Whitcomb
       United States Probation Officer
       United States Probation and Pre-Trial Services Office
       Western District of New York
       100 State Street, Room 111
       Rochester, New York 14614

## CERTIFICATE OF SERVICE

Thomas A. DeSimon, one of the attorneys for defendant Thomas J. Heberle, Jr., hereby certifies that on April 12, 2011, I electronically filed the foregoing Objections to Pre-Sentence Report and Statement With Respect to Sentencing Factors with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants in this case:

Craig R. Gestring, Esq.
Assistant U.S. Attorney
United States Attorneys Office
Western District of New York
100 State Street, Room 620
Rochester, New York 14614
craig.gestring@usdoj.gov

And I hereby certify that I have sent by both electronic mail and regular mail the foregoing, by the United States Postal Service, to the following non-CM/ECF participants:

Sarah C. Whitcomb
United States Probation Officer
United States Probation and Pre-Trial Services Office
Western District of New York
100 State Street, Room 111
Rochester, New York 14614

s/Thomas A. DeSimon
Thomas A. DeSimon

HARRIS BEACH ℗
ATTORNEYS AT LAW